Peter L. Carr, IV (#256104)
pcarr@thePLClawgroup.com
Na'Shaun L. Neal (#284280)
nneal@thePLClawgroup.com
PLC Law Group, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
Telephone: (310) 400-5890
Facsimile:  (310) 400-5895

Attorneys for Plaintiff,
**Mathias Handrinos**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATHIAS HANDRINOS,<br><br>Plaintiff,<br>vs.<br><br>CITY OF HUNTINGTON BEACH; OFFICER PETER B. GLYNN (#423037); OFFICER JOSEPH D. KEARBY (#420010); OFFICER JEREMY GRANNIS (#421158); OFFICER SON D. LAM (#423026) and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Introduction

1. This case challenges the abuse of discretion, excessive force, and negligent acts that deprived the Plaintiff, Mathias Handrinos, of his federal and state rights. Without probable cause or reasonable suspicion to believe that Mr. Handrinos was a danger to the public or any officer, Officer Peter B. Glynn (#423037);

Officer Joseph D. Kearby (#420010); Officer Jeremy Grannis (#421158); Officer Son D. Lam (#423026) and DOES 1 through 10 inclusive, of the Huntington Beach Police Department brutally assaulted and falsely arrested Mr. Handrinos. Plaintiff, Mathias Handrinos, complains of Defendants City of Huntington Beach, Officer Peter B. Glynn (#423037), Officer Joseph D. Kearby (#420010), Officer Jeremy Grannis (#421158), Officer Son D. Lam (#423026) and DOES 1 through 10 inclusive, as follows:

## VENUE AND JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988. State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of Huntington Beach, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

3. At all relevant times herein, PLAINTIFF Mathias Handrinos was and is a resident of the State of California in the County of Orange.

4. Defendant CITY OF HUNTINGTON BEACH (hereinafter referred to as "COHB") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COHB possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the HUNTINGTON BEACH POLICE DEPARTMENT (hereinafter referred to as "HBPD") and its tactics, methods, practices, customs and usages.

5. Defendant OFFICER PETER B. GLYNN (#423037) is, and at all times in this complaint was, an individual employed by COHB and/or its subsidiaries as a sergeant, acting within the course and scope of his employment and also within

his actual and apparent authority as an officer of a public entity, COHB.

6. Defendant OFFICER JOSEPH D. KEARBY (#420010) is, and at all times in this complaint was, an individual employed by COHB and/or its subsidiaries as a sergeant, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COHB.

7. Defendant OFFICER JEREMY GRANNIS (#421158) is, and at all times in this complaint was, an individual employed by COHB and/or its subsidiaries as a sergeant, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COHB.

8. Defendant OFFICER SON D. LAM (#423026) is, and at all times in this complaint was, an individual employed by COHB and/or its subsidiaries as a sergeant, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COHB.

9. At all relevant times mentioned herein and material hereto, the Defendant DOE Officers described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of Defendant COHB, duly employed as police officers by the HBPD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

10. PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

11. Defendants, and each of them, acted under color of law and did the acts and

omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

12. On or about February 16, 2018 at approximately 10:30 p.m., HBPD Officers GLYNN and KEARBY exited their police vehicle and aggressively approached Mr. Handrinos as he closed the trunk of his car in a parking lot, located at 16821 Algonquin Street in Huntington Beach, California, without a warrant, reasonable suspicion or probable cause to believe that Mr. Handrinos, committed, was committing or would commit a crime.

13. Mr. Handrinos asked GLYNN and KEARBY why they approached, but the officers ignored him.

14. There were two passengers inside Mr. Handrinos' car. KEARBY approached the driver's side of Mr. Handrinos' car and peered through the rear window while shining his flashlight inside.

15. Seconds later, KEARBY rushed near GLYNN and Mr. Handrinos. KEARBY and GLYNN forcefully grabbed Mr. Handrinos and slammed his body and head against the trunk of his car.

16. GLYNN twisted Mr. Handrinos' right arm behind his back and handcuffed his right wrist.

17. Meanwhile KEARBY pushed Mr. Handrinos' left elbow into the trunk of the car while twisting and bending Mr. Handrinos' left wrist. Then, using extreme force and both of his hands, KEARBY bent Mr. Handrinos' left wrist forward for several seconds. As this happened, Mr. Handrinos' cried out, "You're hurting me…I'm not resisting"

18. Next, GLYNN pulled Mr. Handrinos towards the ground. Then, KEARBY pulled on Mr. Handrinos' pants, causing them to rip and publicly exposing Mr. Handrinos' butt.

19. GLYNN and KEARBY tackled Mr. Handrinos to the concrete ground and

punched him.

20. Next, GLYNN and KEARBY forcefully restrained Mr. Handrinos' neck, in an effort to render Mr. Handrinos' unconscious.

21. One of the officers said, "He's got a needle." While gasping for air, Mr. Handrinos replied, "I don't have a needle."

22. GLYNN and KEARBY continued applying extreme pressure to Mr. Handrinos' neck and body, in hopes he would pass out. Mr. Handrinos' desperately cried out, "I can't breathe!"

23. GRANNIS arrived on the scene and approached Mr. Handrinos' car.

24. KEARBY pulled Mr. Handrinos' left arm above his head and behind his back. Then, GLYNN and KEARBY violently pushed Mr. Handinos' head towards the ground and slapped Mr. Handrinos in his face.

25. Despite Mr. Handrinos' compliant and non-violent behavior, GLYNN and KEARBY continued applying pressure to Mr. Handrinos' neck. Mr. Handrinos repeatedly cried out, "I'm not resisting…I have Asthma…I can't breathe."

26. LAM arrived on the scene and approached Mr. Handrinos, GLYNN and KEARBY. The officers ordered Mr. Handrinos to turn over onto his stomach. Mr. Handrinos began turning over, but the officers pulled on Mr. Handrinos body and forced him to lie on his back.

27. LAM sat on Mr. Handrinos' stomach and repeatedly struck Mr. Handrinos' face with his elbows and fists. Then, LAM grabbed Mr. Handrinos by his neck from behind and administered a choke hold.

28. As LAM choked Mr. Handrinos, GLYNN pointed his Taser at Mr. Handrinos lower body and deployed it. KEARBY yelled at GLYNN and LAM to keep going.

29. Next, GLYNN pushed his Taser into Mr. Handrinos' lower stomach and deployed it.

30. LAM continued to choke Mr. Handrinos, and eventually Mr. Handrinos lost consciousness.

31. With knowledge that their reports would be used by the Orange County District Attorney's ("DA") office when deciding to bring charges against Mr. Handrinos, the Defendant Officers then made false statements in their reports to cover the fact that they violated Mr. Handrinos' rights by using excessive force and unlawful detaining him.

32. GLYNN, KEARBY, GRANNIS and LAM falsely reported that Mr. Handrinos was defiant and non-compliant with their orders.

33. GLYNN and KEARBY falsely reported Mr. Handrinos possessed a hypodermic needle on his person.

34. Based on the Defendant Officers' false statements within their reports, the DA filed a misdemeanor charge against Mr. Handrinos for resisting arrest.

35. On October 25, 2018, the charges against Mr. Handrinos were dismissed.

36. As a result of the excessive force Defendant Officers applied against Mr. Handrinos, Mr. Handrinos suffered extreme physical pain.

37. In addition to the physical injuries, Mr. Handrinos suffered at the hands of Defendant Officers, Mr. Handrinos also suffered a loss of liberty and emotional trauma.

38. Defendants COHB, GLYNN, KEARBY, GRANNIS, LAM and DOES 1 through 10, inclusive, owed to PLAINTIFF non-consensual duties set forth in California Penal Code Sections 118.1 (false police report): 148.5 (false report of a crime); 134 (preparing false evidence); 132 (offering false evidence); 127 (subordination of perjury); 137 (induce false testimony); 182(1) (conspiracy to commit crime); 182(2) (conspiracy to obstruct justice); 832.5 (personnel complaint investigations required); and Gov. Code § 1031 (duty to investigate hires).

/ / /

/ / /

/ / /

# FIRST CAUSE OF ACTION

## EXCESSIVE FORCE – 42 U.S.C. § 1983

**(Against GLYNN, KEARBY, LAM and DOES 1 through 10, inclusive)**

39. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

40. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

41. As a result of the above described intentional acts and omissions of the Defendant Officers, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

  a. KEARBY and GLYNN forcefully grabbed Mr. Handrinos and slammed his body and head against the trunk of his car, without probable cause or reasonable suspicion.

  b. GLYNN twisted Mr. Handrinos' right arm behind his back and handcuffed his right wrist.

  c. KEARBY pushed Mr. Handrinos' left elbow into the trunk of the car while twisting and bending Mr. Handrinos' left wrist.

  d. With extreme force, KEARBY used both of his hands to bend Mr. Handrinos' left wrist forward for several seconds

  e. GLYNN pulled Mr. Handrinos towards the ground.

  f. KEARBY pulled on Mr. Handrinos' pants, causing them to rip and publicly exposing Mr. Handrinos' butt.

  g. GLYNN and KEARBY tackled Mr. Handrinos to the concrete ground and punched him.

  h. GLYNN and KEARBY forcefully restrained Mr. Handrinos' neck, in

an effort to render Mr. Handrinos' unconscious.

    i. KEARBY pulled Mr. Handrinos' left arm above his head and behind his back.

    j. GLYNN and KEARBY violently pushed Mr. Handinos' head towards the ground and slapped Mr. Handrinos in his face.

    k. LAM sat on Mr. Handrinos' stomach and repeatedly struck Mr. Handrinos' face with his elbows and fists.

    l. LAM grabbed Mr. Handrinos by his neck from behind and administered a choke hold.

    m. GLYNN pointed his taser at Mr. Handrinos lower body and deployed it, as LAM choked Mr. Handrinos.

    n. GLYNN pushed his Taser into Mr. Handrinos' lower stomach and deployed it.

    o. LAM continuously choked Mr. Handrinos, eventually causing Mr. Handrinos to lose consciousness.

42. At no point did Mr. Handrinos pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Mr. Handrinos made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Mr. Handrinos had the will or ability to inflict substantial bodily harm against any individual.

43. Additionally, at no point during the incident did Mr. Handrinos show any sign of resisting the Defendant Officers. In fact, in an effort to stop the brutal assault against him, Mr. Handrinos pleaded to Defendant Officers, "I'm not resisting." Moreover, body camera footage reveals that when Defendant Officers demanded Mr. Handrinos turn over onto his stomach, Mr. Handrinos complied; but, the officers pulled on Mr. Handrinos body and forced him to lie on his back. Immediately after, LAM sat on Mr. Handrinos' stomach and repeatedly struck Mr. Handrinos' face with his elbows and fists.

44. As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, Mr. Handrinos sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, as well as harm to his reputation in the community.

45. The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

46. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

47. Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## SECOND CAUSE OF ACTION

## UNLAWFUL DETENTION – 42 U.S.C. § 1983

**(Against GLYNN, KEARBY and DOES 1 through 10, inclusive)**

48. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

49. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

50. As a result of the above described intentional acts and omissions of the Defendant Officers, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

a. GLYNN and KEARBY unlawfully stopped and detained Mr. Handrinos,

without a warrant, reasonable suspicion or probable cause to believe Mr. Handrinos committed, was committing or would commit a crime.

51. The conduct of the Defendant Officers was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

52. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

53. Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## THIRD CAUSE OF ACTION
## MALICIOUS PROSECUTION – 42 U.S.C. § 1983
### (Against GLYNN, KEARBY, GRANNIS, LAM and DOES 1 through 10, inclusive)

54. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

55. GLYNN, KEARBY, GRANNIS and LAM while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to be free from malicious prosecution.

56. GLYNN, KEARBY, GRANNIS and LAM contributed to, caused, and/or initiated a criminal prosecution against Plaintiff with malice and/or with the purpose of depriving him of his constitutional rights. GLYNN, KEARBY, GRANNIS and LAM did not have probable cause to arrest or to prosecute Mr. Handrinos for resisting arrest, and initiated prosecution for the purpose of evading civil liability. The prosecution ultimately terminated in Mr. Handrinos' favor, with a dismissal of

the resisting arrest charge. GLYNN, KEARBY, GRANNIS and LAM knew or should have known there was no probable cause to believe Mr. Handrinos was guilty of resisting arrest.

57. Plaintiff brings this action under federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

58. As a result of Defendant Officers' malicious prosecution of Plaintiff, Mr. Handrinos has suffered loss of liberty. In addition, Mr. Handrinos has suffered and may continue to suffer severe physical injuries, emotional trauma and extreme mental distress.

59. The conduct of GLYNN, KEARBY, GRANNIS and LAM was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages against him.

60. Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION
## MUNICIPAL LIABILITY – 42 U.S.C. § 1983
### (Against Defendant COHB)

61. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

62. Defendant COHB is and at all times herein mentioned, has been a public entity duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendant COHB possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the HBPD officers and their tactics, methods, practices, customs and usages.

63. At all times herein mentioned, Defendant Officers and each of them, were employees acting under the direction and control of the COHB, who knowingly and intentionally promulgated, maintained, applied, and enforced the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Such customs, policies, practices and usages at all times herein mentioned, required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies employed by the COHB.

64. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COHB include, but are not limited to:

    a. Defendant COHB had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, improper tactics, and abuse of discretion by HBPD employees, including the individual Defendant Officers herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiff's liberty interests;

    b. Defendant COHB refused to adequately discipline individual employees found to have committed similar acts of negligence and excessive force;

    c. Defendant COHB refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by HBPD employees;

d. Defendant COHB failed to adequately supervise the actions of employees under its control;

e. Defendant COHB failed to adequately train its officers so as to avoid constitutional violations;

f. Defendant COHB tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

g. Defendant COHB tacitly condones and encourages use of excessive force on citizens;

h. Defendant COHB fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by February 16, 2018, and thereafter, represented the unconstitutional policies, practices and customs of the COHB.

65. The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendant COHB:

   a. On December 7, 2018, Mr. Maliek Rosier filed a lawsuit against COHB and its officers alleging excessive force, unlawful detainment, unlawful custom and practice, battery, negligence, intentional infliction of emotion distress and violation of the Bane Act. The lawsuit alleged the officers confronted Mr. Rosier, handcuffed him and put him in a choke hold that caused him to lose consciousness.

   c. On April 24, 2017 2014, Mr. Stephan Shay and Mr. Nathan Shay filed a lawsuit against COHB and its officers alleging excessive force, failure to prevent excessive force, unlawful custom and practice, unlawful detainment, and unlawful search, among other claims.

   d. In December 2019, a three-judge federal appeals panel decided there is enough evidence to warrant a trial in a civil case against two Huntington Beach police officers involved in the fatal shooting of a man at a local sports park in 2017 and remanded claims of battery and negligence to a lower court,

according to media reports.

66. The decisions of Defendant Officers to brutally batter Mr. Handrinos for no conceivably valid reason represents a larger systemic issue of predatory policing and a culture among HBPD that encourages violence.

67. By reason of the aforesaid policies, customs, practices and usages, Mr. Handrinos' rights under the Fourth and Fourteenth Amendments of the United States Constitution were violated.

68. On information and belief, not one of the Defendant Officers involved in the aforementioned incident has been reprimanded or sanctioned by Defendant COHB or HBPD for their actions against Mr. Handrinos.

69. On information and belief, the extreme escalation of a stop into a violent attack was ratified by Defendant COHB and HBPD by failing to discipline any officer involved or modify training to address this type of situation in the future.

70. Defendant COHB has acted with deliberate indifference to Mr. Handrinos' constitutional rights. As a proximate result of these acts, Mr. Handrinos' constitutional rights have been violated, causing him to suffer physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

71. Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## PRAYER

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1. For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;
2. For special damages according to proof;
3. For punitive damages as provided by federal and state law, in an amount

to be proved against each individual Defendant;

4. For prejudgment interest;

5. For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6. For reasonable costs of this suit incurred herein;

7. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: July 7, 2020            **PLC LAW GROUP, APC**

*/s/Na'Shaun L. Neal*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
Attorneys for Plaintiff Mathias Handrinos

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated: July 7, 2020            **PLC LAW GROUP, APC**

*/s/Na'Shaun L. Neal*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
Attorneys for Plaintiff Mathias Handrinos